IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

QUINITA BROWN,           )
                         )    No. 16 C 9957
           Plaintiff,    )
                         )
     v.                  )
                         )    Magistrate Judge Sidney I. Schenkier
NANCY A. BERRYHILL, Acting )
Commissioner of the U.S. Social )
Security Administration,[1] )
                         )
           Defendant.    )

## MEMORANDUM OPINION AND ORDER[2]

Claimant Quinita Brown ("Claimant" or "Ms. Brown") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for both Supplemental Security Income benefits ("SSI") and Disability Insurance benefits ("DIB") (doc. # 23: Pl.'s Mot. for Summ. J.). The Commissioner has filed a motion seeking affirmance of the decision denying benefits (doc. # 25: Def.'s Mot. for Summ. J.), and Claimant has filed a reply (doc. # 30). For the following reasons, we remand the case.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On December 15, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 10).

**I.**

On May 22, 2012, Ms. Brown filed an application for SSI and DIB, alleging a disability beginning on September 1, 2009, with a date last insured of December 31, 2010 (R. 264, 266, 290). After her claim was initially denied on September 13, 2012 and on reconsideration on February 21, 2013 (R. 88, 108), Ms. Brown requested a hearing by an Administrative Law Judge ("ALJ") (R. 140). In order to obtain additional medical and school records and a second psychological examination, the ALJ ultimately held four separate hearings, on October 4, 2013, June 16, 2014, October 20, 2014, and April 1, 2015 (R. 13). On June 12, 2015, the ALJ ruled that Ms. Brown was not disabled, and Ms. Brown filed a request for review (R. 7-9). On September 12, 2016, the Appeals Council upheld the ALJ's determination, making the ALJ's determination the final opinion of the Commissioner (R. 1-3). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

**II.**

Ms. Brown's application for benefits contended she was unable to work because of a learning disability and asthma (R. 90). Because Ms. Brown does not dispute the ALJ's finding that her "asthma" is actually acute rhinitis, which is fully accounted for in Ms. Brown's residual functional capacity ("RFC"), our decision today only concerns her allegations regarding her intellectual disability.

**A.**

We remand on a narrow issue: the ALJ's failure to require the vocational expert ("VE") to provide substantiation of her hearing testimony about the number of jobs available in the local economy that Ms. Brown could perform, given her RFC. At the fourth and final hearing in April 2015, the VE testified that Ms. Brown would be able to work as a hand packer, Dictionary of

2

Occupational Titles ("DOT") 920.687-066, with 38,000 jobs locally; assembler, DOT 739.687-186, with 20,000 jobs in the local economy; and sorter, DOT 929.687-022, with 17,000 jobs in the local economy (R. 71). Ms. Brown's attorney asked the VE how she arrived at her jobs numbers, and the VE responded that "they come from the United States Department of Labor and the U.S. Census Bureau, and they can all be found online, and then I also base my numbers off of my professional experience and training of placing individuals in new employment and doing job development for my clients and actually talking to employers and doing labor market surveys" (R. 78-79). Based on this testimony, Ms. Brown's attorney made a request for any and all documentation pertaining to the VE's methodology for determining her jobs numbers, citing *McKinnie v. Barnhart,* 368 F.3d 907 (7th Cir. 2004), as authorizing the request (R. 79-80).

The ALJ took the request under advisement and then denied it with a detailed explanation in his opinion. He explained that the Agency takes administrative notice of jobs data from various governmental and other publications, including the Dictionary of Occupational Titles, the Bureau of the Census *County Business Patterns,* the SSA *Occupational Analyses,* and the *Occupational Outlook Handbook* published by the Bureau of Labor Statistics (R. 32). The ALJ further noted that Ms. Brown's attorney had the opportunity to cross-examine the VE at the hearing; indeed, her counsel asked a number of detailed questions about the specific requirements of each job and how they both conformed to Ms. Brown's RFC and differed from previous jobs she had held and was unable to perform (R. 70-79). In his opinion, the ALJ discussed the colloquy between Ms. Brown's attorney and the VE at length and described why Ms. Brown was able to perform each job within the confines of her physical and mental RFC (R. 32). The ALJ stated that the VE is entitled to rely on the data from the above-listed governmental sources (R. 32), and that he was concerned that requiring the VE to turn over information about

her clients might compromise their privacy (*Id.*). Finally, the ALJ stated that, because most of the information about the jobs is available online, Claimant's counsel was able to research the specific requirements for each job online (*Id.*).

We agree with the ALJ that the VE's testimony sufficiently established that the jobs she listed were consistent with Ms. Brown's RFC and did not conflict with the DOT. But that finding does not address Ms. Brown's specific assignment of error: that the ALJ denied her request for substantiation of the VE's methodology for determining the *number* of available jobs. Moreover, we find that the ALJ's reasons for denying Claimant's motion for the VE's underlying documents and methodology are not valid.

The seminal Seventh Circuit case on the issue of a VE's responsibility is, as Claimant notes, *McKinnie v. Barnhart*. In *McKinnie*, the VE testified that she derived her jobs numbers from "market studies, Department of Labor Statistics, and Census Bureaus . . . in combination, to include my personal labor market surveys." *McKinnie*, 368 F.3d at 909. The VE did not have a written report or reference materials to support her conclusions and the ALJ held that if the Claimant wished to see such materials, or other substantiation of the data, he would have to pay the VE for her time (*Id.*). The Seventh Circuit ruled that, while a VE is entitled to give a "bottom line" regarding jobs numbers, the data and reasoning for that determination must be "available on demand" if the claimant challenges the foundation for the VE's opinion. *McKinnie*, 368 F.3d at 910. Without such data, if requested, the ALJ's Step 5 determination that sufficient jobs exist in the economy is not supported by substantial evidence. *Id.; see also Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009) (government bears the burden at Step 5 to establish that claimant has the RFC to perform work that exists in significant numbers in the economy).

In this case, Ms. Brown requested information concerning the methodology the VE used to arrive at the numbers. Specifically, Ms. Brown seeks the VE's underlying methodology and data to determine "how the expert reached her conclusion about how many jobs match the Administrative Law Judge's residual functional capacity assessment. (Pl. Mem. in Support of Summ. J. at 19-20). She also argues that, "because Brown's 'counsel had no opportunity to cross-examine the [expert] on the underlying data' and methodology, the expert's testimony cannot support the Administrative Law Judge's Step Five conclusion" (*Id.* at 21, citing *McKinnie,* 368 F.3d at 910). Because Ms. Brown is challenging the methods the VE used to arrive at her jobs numbers, we remand the case so that the ALJ can order the VE to produce substantiation of her testimony. While we recognize that the ALJ gave a number of reasons for denying Claimant's request for the VE's underlying data, we conclude that none of those reasons warranted the denial of Ms. Brown's request.

*First,* the fact that the Agency may take administrative notice of jobs numbers posted in various government publications has no bearing on a claimant's independent right to obtain the underlying methodology showing how a VE determined those numbers using the sources cited. Had the VE produced, for example, pages from these sources showing the jobs data she cited, it may have been appropriate for the ALJ to take administrative notice of those documents. But *McKinnie* requires more than a VE's mere listing of government publications as the general source of jobs numbers; in this case, there was no specific document or page of which the ALJ could take administrative notice. *Second,* while the Claimant's attorney had the opportunity to cross-examine the VE, the scope of the questioning concerned only how each job did or did not conform to Ms. Brown's RFC. Her attorney was unable to ask the VE about the basis for her jobs numbers because she did not produce the information that would have disclosed her underlying

methodology. *Third,* any privacy concerns regarding the VE's private clients and their identifying information can be easily addressed through means short of outright denial of the information (such as, for example, careful redactions). *Fourth,* the ALJ's assertion that the jobs numbers were available online was not an adequate substitute for Ms. Brown's right to obtain from the VE the specific information that she actually relied on, without having to perform an internet search and to guess what information the VE specifically used and how she used it. To the contrary, telling a plaintiff to search for the information does not comply with the *McKinnie* court's directive that "[t]he data and reasoning underlying a vocational expert's opinions" be "available on demand." 368 F.3d at 911.

In remanding, we are not holding that the VE's jobs numbers are in fact unreliable, only that Ms. Brown has the right to see how they were derived so that she can determine whether they are subject to legitimate challenge. *See, Weatherbee v. Astrue,* 649, F.3d 565, 572 (7th Cir. 2011 (In the context of a Step 5 analysis, 1,000 of a particular job constitutes a significant number). Whether the numbers are reliable is not for us to say here today. We remand this case for the limited purpose of ordering the VE to produce a foundation for her testimony about the number of jobs available for Ms. Brown.

## CONCLUSION

For the above reasons, we remand the case so that the ALJ may order the VE to produce her underlying methodology for determining her jobs numbers and for other proceedings consistent with this Memorandum Opinion and Order.[3]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: November 14, 2017

---

[3] The issue of the VE's underlying methodology is the only issue for which remand is proper. To that end, we specifically reject the argument that the ALJ erred in his treatment of Ms. Brown's purported prior claim or any files or records connected to that claim. Ms. Brown offers only speculation about the existence and content of a prior claims file, and it is far from evident what impairment formed the basis for that claim; all three of the determination and transmittal forms in the record list diagnoses of both a learning disorder and asthma (R. 88, 89, 109). *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009) (mere conjecture that additional evidence might have been available is insufficient to support remand).

Ms. Brown also incorrectly asserts that the ALJ "admitted" that the prior claim file was relevant (Mem. in Sup. of Summ. J. at 15). In fact, the ALJ merely noted that it is normal practice for a claimant to request a prior claim file if the claimant thinks it is relevant. Nowhere did the ALJ suggest that he considered the prior file relevant or that he needed it to make his decision. And finally, despite Claimant's counsel agreeing at the end of the June 2014 hearing to submit a full request for "everything that's there," *i.e.* in the prior file, there is no evidence that he ever made such a request.

We likewise disagree with Claimant that the ALJ erred in finding that she did not meet Listing 12.05; specifically, we find that the ALJ sufficiently supported his determination that Ms. Brown did not show deficits in adaptive functioning prior to age 22. In his opinion, the ALJ discussed the evidence that supported his finding and also addressed Ms. Brown's arguments and evidence that she did have such deficits. In the end, Claimant's assignment of error is nothing more than a disagreement with the way the ALJ weighed the evidence, which is not a basis for remand. *Alvarado v. Colvin,* 836 F.3d 744, 747 (7th Cir. 2016).